ONYX OILS & RESINS, INC., Plaintiff, *v.* ROBERT STEINBERG, Individually and Trading as STEINBERG BROS., Defendant.

City Court of New York, Trial Term, New York County, February 24, 1943.

*Louis Epstein* for plaintiff.

*Jacob Cottin* for defendant.

CARLIN, J.  The oral testimony and exhibits on this trial show the following facts: On December 26, 1941, the defendant sought to buy a product known as lithopone and his sales manager, Adams, telephoned G. A. Wharry & Company, Inc., hereinafter called Wharry, plaintiff's agent, and ascertained from its sales agent, Bloch, that it had a quantity of the product sufficient for defendant's order from a customer in Alexandria, Egypt; as a result the defendant ordered 25,000 pounds at twelve cents a pound; Bloch testified that he was advised by Adams that the product was for export.  There appears a difference between Adams and Bloch as to the terms upon which the sale was to be consummated; Bloch sent defendant a " confirmation of sale " in duplicate for signature and approval; it contained the terms of " payment: *cash* v. *Invoice;* " Adams telephoned Bloch and stated that there was an error in the terms and advised him that there would be no acceptance thereunder as they were not as agreed upon; Bloch advised Adams to change said terms and if Wharry accepted them as changed by Adams it would be satisfactory.  Adams thereupon signed the acceptance on defendant's behalf after deleting the word " Invoice " and adding " Dock Receipt " and returned it to Wharry, which a few days thereafter signed the " confirmation " and returned one of the copies to defendant.  Presupposing, as plaintiff's witnesses Bloch and Klein contend, that the original terms were " against invoice," the plaintiff cannot further maintain that a contract was consummated, since to so hold would nullify the purport of the " confirmation " form which was sent to defendant for acceptance and was accepted by him through Adams with a change of terms from " Invoice " to " Dock Receipt." This constituted an offer by defendant which was accepted by plaintiff through its agent, Wharry, by the return to defendant of a copy signed by said agent.  Certainly plaintiff need not have taken the order on said

terms; having so done it cannot now urge that the contract was as originally set forth in the confirmation it sought.

Neither Adams, acting for defendant, nor Bloch, acting for plaintiff, ever met each other; the transaction was the result of telephone conversations. The terms accepted by both parties also contained the words " Shipment Prompt; " construed by both parties this appears to mean that the shipment would be made within one week to ten days from the date of consummation of the agreement, that is,about ten days from December 26, 1941; the term " Dock Receipt," qualifying the time for payment, carries with it the deferment of obligation until · the merchandise is actually placed on the dock and shipping instructions are actually received by the plaintiff. Adams testified that he asked Bloch if the shipment needed a special license or a general license and that Bloch advised that a general license was all that was required; it developed that the shipment needed a special license which the State Department refused to issue on the application of Adams on January 30, 1942. The facts disclose that the shipment was prevented by the Office of Price Administration which placed a ceiling price on the product by its order of January 29, 1942, effective February 2, 1942. It appears, rather significantly, that plaintiff sought to force acceptance of the goods by defendant on the same day. The ceiling price was four and one-quarter cents a pound, raised by amendment on February 2, 1942, and effective the same day, to four and one-half cents a pound; by this amendment the said executive office proclaimed that " regardless of the terms of any contract of sale or *price or other commitment,* no person shall sell, offer to sell, deliver or transfer lithopone, and no person shall buy, offer to buy, or accept delivery of lithopone at prices higher than the maximum prices set forth in Appendix A " (i.e., four and one-quarter cents a pound), except that the price was raised one fourth of a cent plus thirty cents a hundred pounds for shipment by vessel. It appears that at about the time the contract herein was consummated the Office of Price Administration had under advisement the fixation of a price ceiling on the aforesaid product; it further appears that the amendment from four and one-quarter to four and one-half cents was further amended, to be effective February 27, 1942, by a promulgation of the Office of Price Administration (Collation No. 1; defendant's exhibit H) in which it set forth in subdivision " E " the following provision: " Preexisting contracts: On and after February 2, 1942, any dealer or exporter who was not engaged in manufacturing lithopone or engaged in

any other manufacturing activity prior to such date and who, prior to February 2, 1942, had lithopone on hand or in the hands of a carrier or warehouse other than a carrier or warehouse owned and controlled by the person from whom such lithopone was purchased, in order to meet a contract of sale made prior to February 2, 1942, may deliver such lithopone in accordance with the terms of such contract;'' then follow certain precedent conditions which it is incumbent on the plaintiff to establish to bring the contract within the exceptions to avoid the ceiling price of four and one-half cents a pound and to make the defendant liable thereunder; this proof has not been established by the plaintiff. '' Payment against Dock Receipt,'' — the term under which defendant would be liable, presupposed the procurement of said receipt for a ship that would carry the merchandise to Alexandria, Egypt; the evidence shows that defendant advised the plaintiff within a few days of the execution of the contract of a ship for carriage but, as a special license from the Office of Production Management was necessary, the shipment could not then be made as the license would not be issued. The failure to procure a dock receipt was not imputable to defendant who in the court's opinion would have consummated his purchase but for the intervention of the aforesaid governmental agency which controlled the price and export of lithopone by its various orders and regulations.

Motions by defendant at the close of plaintiff's and of the entire case to dismiss the complaint, upon which decision was reserved, are granted with exception to plaintiff. Judgment for defendant against plaintiff dismissing its complaint upon the merits. Plaintiff is granted ten days' stay of execution on any judgment for costs which defendant may enter and thirty days to make a case.